# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

**PRINCE KNIGHT**                                                            **PLAINTIFF**

**V.**                                              **CIVIL ACTION NO. 3:18CV34 LG-LRA**

**WARDEN L. SHULTS, ET AL.**                                            **DEFENDANTS**

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Knight is currently incarcerated at the Federal Correctional Complex ("FCC") in Yazoo City, Mississippi, and files the instant Complaint, pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) against prison officials for allegedly violating his First Amendment constitutional rights, the Religious Freedom Restoration Act, the Religious Land Use and Institutionalized Persons Act, and the Equal Protection Clause.  Knight alleges that Defendants: Warden L. Shults; Food Service Administrator Z. Lee; and, Assistant Food Service Administrator J. Paxton, improperly denied him the Nation of Islam's Annual Ceremonial meal in accordance with the Bureau of Prison's (BOP) policy.[1]  Defendant Shults requests an order of dismissal pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction, or in the alternative, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a

---

[1] The undersigned is mindful that Knight contends that Shults's motion is untimely because it was filed after August 6, 2018.  Defendant Shults was granted an extension of time until August 6, 2018, in which to file an Answer to the Complaint.  The docket reflects that his Answer was timely filed by this deadline. Shults was not required to file the instant motion by that deadline.

claim upon which relief may be granted.  Having considered the submissions of the parties and the applicable law, the undersigned recommends as follows.

In the instant case, Plaintiff alleges that he submitted a request, on January 3, 2017, to be served the Nation of Islam's Ceremonial Meal on February 26, 2017, in commemoration of the birth of the religion's founder.  Yet, despite receiving the approval of "Religious Services and Food Services," Plaintiff asserts that he was not provided the requested ceremonial meal, which was to consist of: fried fish, steamed broccoli, navy bean soup, vegetable fried rice, macaroni and cheese, banana, and a non-meat option for fish.  Plaintiff states that "[u]pon arrival at Food Service with Chaplain Saccucci on 2/28/17 we found . . .  that the meal was changed by Mr. Lee to the Chicken patty meal served [to the inmate population] at lunch."  Specifically, he alleges that Defendant Paxton agreed to the meal and then later ordered Defendant Lee to deny the meal based on an erroneous interpretation and/or application of BOP policy.  According to Plaintiff, Defendant Shults's error was "in agreeing with them;" more specifically, "[h]is misunderstanding and failure to enforce applicable law and BOP Policy caused him to err in treating [Plaintiff's] religious community in a discriminatory manner as opposed to the general population." Plaintiff seeks injunctive and declaratory relief as well as punitive damages in the amount of $10,000,000 because "no meal was consumed by the group for that afternoon."[2]

---

[2] ECF No. 1, p. 6; 2, p.2-3; *see also* ECF No. 2-1 – 2-5.

**STANDARDS OF REVIEW**

Summary judgment is appropriate only when the moving party can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-movant. *Nickell v. Beau View of Biloxi, L.L.C.,* 636 F.3d 752, 754 (5th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).  A fact is material if its resolution in favor of one party might affect the outcome of the case. *Anderson,* 477 U.S. at 248.  The evidence and any inferences therefrom are viewed in the light most favorable to the non-movant.  *First Colony Life Ins. Co. v. Sanford,* 555 F.3d 177, 180 (5th Cir. 2009).  If, on a motion under Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  Fed. R. Civ. P. 12(d).

Because Defendants rely on matters outside the pleadings, the motion to dismiss should be construed as a motion for summary judgment.  *See* Fed. R. Civ. P. 12(b); *Young v. Biggers,* 938 F.2d 565, 568 (5th Cir.1991).

**DISCUSSION**

**A.  First Amendment Free Exercise Claim**

The Free Exercise Clause of the First Amendment requires the government to refrain from interfering with the religious beliefs and practices of individuals. *Cutter v. Wilkinson,* 544 U.S. 709, 719 (2005).  As a prisoner, however, Plaintiff retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or

3

with legitimate penological objectives of the corrections system." *Pell v. Procunier,* 417 U.S. 817, 822 (1974).  Therefore, a government regulation may interfere with the religious beliefs and practices of a prisoner if it is reasonably related to a legitimate penological interest.  *Turner v. Safley,* 482 U.S. 78, 89 (1987) (setting out four-factor test for determining whether a prison regulation that infringes on an inmate's First Amendment rights is nonetheless reasonable and therefore constitutionally valid); *see also Butts v. Martin*, 877 F.3d 571, 585 (5th Cir. 2017) (noting that "free exercise claims in this Circuit are analyzed under the *Turner* framework separately and independently from RFRA and RLUIPA claims").

In *Bivens,* the United States Supreme Court established that the Constitution may support a private cause of action against federal officials for constitutional torts and allowed the victims of a Fourth Amendment violation by federal officers to sue the officers for monetary damages in federal court. 403 U.S. at 388.  Plaintiff asserts that he is entitled to *Bivens* damages because Defendants violated his First Amendment right to freely exercise his religious beliefs.

A *Bivens* action is the counterpart for those acting under color of federal law of a suit brought under § 1983.  *Dean v. Gladney*, 621 F.2d 1331, 1336 (5th Cir. 1980). Because its purpose "is to deter individual federal officers from committing constitutional violations," *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 70 (2001), it may only be maintained against a defendant in his or her individual capacity.  *Id.* at 72 ("The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP.").  Accordingly, to the extent Plaintiff is attempting to assert a *Bivens* claim

against Warden Shults in his official capacity, he fails to state a viable claim.  To the extent Plaintiff brings an individual-capacity claim, however, he is not entitled to a *Bivens* remedy for the reasons that follow.  *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007).

There is first a question of whether *Bivens* applies to a First Amendment claim.[3] Assuming for purposes of argument that it did apply, Plaintiff would still not be entitled to relief for reasons explained herein. The undersigned has considered the record and applicable law and finds that there is no genuine issue as to any material fact regarding Plaintiff's First Amendment claims against Defendant Shults because there is no supervisory liability under *Bivens*. Thus, it is unnecessary for the Court to decide whether *Bivens* extends to First Amendment claims.

Defendant Shults asserts that Plaintiff fails to state a *Bivens* claim against him because Plaintiff does not provide any evidence that he personally participated in the conduct, and he cannot be held vicariously liable for alleged violations based on his supervisory responsibilities over other prison officials.  In his affidavit, Defendant Shults states:

> In his Complaint, Plaintiff, Prince Knight states that I agreed with the other named defendants' decision to deny him a ceremonial meal. Inmate Knight also claims I failed to enforce the applicable law and policy and that I discriminated against him and his religious community.

> Plaintiff, however, fails to explain my direct, personal involvement in the alleged constitutional violations.  I aver that I was not personally involved in any alleged decision by the named defendants to deny Plaintiff

---

[3] *See Butts*, 877 F.3d at 587 (remanding to the district court for a determination of whether a *Bivens* remedy is available for Plaintiff's free exercise claim); *Biron v. Upton*, 737 F. App'x 713, 716 (5th Cir. 2018) (remanding for further proceedings to address foundational issue of whether *Bivens* applies to plaintiff's claims).

a ceremonial meal. I was not involved in the planning or scheduling of the February 28, 2017, ceremonial meal Plaintiff [sic]. My duties as Warden involve general oversight and administration. As many wardens routinely do, I rely on the institution's department heads and other supervisors to make day-to-day decisions concerning their department and areas of expertise.

Plaintiff references the institutional response to his administrative-remedy request concerning the alleged denial of his ceremonial meal. Despite Plaintiff's assertions, I did not review, prepare, or sign the response to this administrative remedy. The remedy clearly shows that another executive acting in my capacity while I was away from the institution signed the response.

I have no personal policy of denying inmate religious groups ceremonial meal requests, and I have never had or adopted a policy of denying Plaintiff his right to free exercise of religion.

As Bureau Program Statement 5360.09 CN-1 regarding Religious Belief and Practices states, "ceremonial or commemorative meals will be served in the Food Service facilities, unless the Warden authorizes otherwise . . . [;] [t]o maintain equity in menu design, all meals must be prepared from food items on the institutional master menus." Program Statement 5360.09 CN-1 (18)(5)(c).[4]

In response to Shults's averments, Plaintiff merely reiterates that Shults is a supervisor and that he fails to establish "that he was not deprived of the meal in question."[5]  However, "there is no doctrine of respondeat superior in *Bivens* actions." *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998).  A supervisory federal official can only be held liable if there is: (1) "personal involvement in the acts causing the deprivation of a person's constitutional rights" or (2) "if he implements a policy so deficient that the policy itself acts as a deprivation of constitutional rights. *Id.*  As

---

[4] ECF No. 33-1 (internal record citation omitted).

[5] ECF No. 35, p. 4.

Defendant Shults points out, Plaintiff fails to demonstrate his personal involvement and fails to establish that he implemented an unconstitutional policy to deny Plaintiff the requested meal. Without personal involvement or participation in an alleged constitutional violation, the Court should find there is no actionable *Bivens*' claim against Defendant Shults and find that he is entitled to a judgment as a matter of law on Plaintiff's First Amendment Claim.

## B. RLUIPA and RFRA CLAIMS

Plaintiff also alleges that the denial of his ceremonial meal was a violation of RFRA and RLUIPA. The undersigned notes, however, that RLUIPA provides a cause of action only against state actors. *Godbey v. Wilson*, No. 1:12CV1302 TSE-TRJ, 2014 WL 794274, at *4 (E.D. Va., Feb. 26, 2014). ("RLUIPA is the state-prison analog to RFRA.") Because Plaintiff is an inmate in federal custody and all defendants are federal officials, he cannot seek a remedy against these defendants pursuant to this statute. The Court should therefore dismiss Plaintiff's RLUIPA claim.

RFRA protects the "exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. 2000cc-5. Under RFRA, the government is prohibited from substantially burdening "a person's exercise of religion even if the burden results from a rule of general applicability" unless the government demonstrates a compelling interest achieved by the least restrictive means. 42 U.S.C. § 2000bb-1(a)-(b).

To the extent Plaintiff seeks to hold Defendant Shults liable under RFRA based purely on his supervisory role as warden, courts are in a disagreement as to whether an individual can be held vicariously liable under RFRA. *Compare Patel v. Bureau of*

7

*Prisons*, 125 F. Supp. 3d 44 (D.C. 2015) (concluding that as a matter of first impression, pure vicarious liability is not sufficient to state a claim under RFRA); *Agrawal v. Briley*, No. 02–6807, 2004 WL 1977581, at *14 (N.D. Ill. Aug. 25, 2015) (declining to enter judgement for the defendant on a vicarious liability claim under RLUIPA where warden had "deliberate[ly] avoid[ed] any involvement in review of Plaintiff's grievance"). *See also Curry v. Gonzales,* No. 07–0199, 2007 WL 3275298, at *1 (D.D.C. Nov. 6, 2007); *White v. Sherrod,* No. 07–821, 2009 WL 196332, at *1 (S.D. Ill. Jan. 28, 2009).

Assuming the RFRA claim is allowed to proceed against Defendant Shults, Plaintiff bears the initial burden of establishing that the ability to practice his religion is substantially burdened. *Adkins v. Kaspar,* 393 F.3d 559, 567 (5th Cir. 2004). A government action imposes a substantial burden on religious exercise if it "truly pressures the adherent to significantly modify his religious behavior and significantly violates his religious beliefs." *Id*. at 570.

> [T]he effect of a government action or regulation is significant when it either (1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs. On the opposite end of the spectrum, however, a government action or regulation does not rise to the level of a substantial burden on religious exercise if it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed.

If a plaintiff meets his burden of proof, the burden shifts to the government to "demonstrate that its action was supported by a compelling interest and that the regulation is the least restrictive means of carrying out that interest." *Mayfield v. Texas*

*Dept. of Criminal Justice*, 529 F.3d 599, 613 (5th Cir. 2008).  In determining whether a compelling governmental interest exists to support a regulation substantially burdening an inmate's free exercise of religion, the review must be made with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources."  *Chance v. Texas Dept. of Criminal Justice*, 730 F.3d 404, 410 (5th Cir. 2013).  Whether there has been an RFRA violation requires a "fact-specific inquiry that takes into account the special circumstances of the individual prisoner and prison." *Id.* at 411 (applying RLUIPA).  Summary judgment is appropriate if there is no genuine dispute as to any material fact.

In the instant case, there is no dispute that the menu items on the day in question were derived from the National Menu.  There also appears to be no dispute that the activity alleged to be burdened – a ceremonial meal – qualifies as a religious exercise for the Muslim faith under RFRA's definition.  Federal regulations also clearly provide that inmate religious groups are allowed to have one ceremonial meal per year, 28 C.F.R. § 548.20, which "may be prepared and/or served to a specific group of inmates rather than to the entire inmate population of the institution."  28 C.F.R. § 547.20.

In his pleadings and the exhibits attached thereto, Plaintiff states that he has been a practicing Muslim for eight years, and the defendants' failure to provide the requested meal substantially burdened his sincerely held religious beliefs in violation of RFRA.  He avers that even though the ceremonial meal was pre-approved and readily available from the National Menu items at no extra cost or work to BOP, the meal was not provided and

"inmates were not allowed to go to the lunch meal." As a result, "no meal was consumed by the group for that afternoon." BOP officials do not directly address this charge.[6]

Assuming that, viewing the evidence in the light most favorable to Plaintiff, the Court finds that the denial of the ceremonial meal imposed a substantial burden on Plaintiff's sincerely held religious beliefs, the burden of proof shifts to the government to show that its action or policy "(1) is in furtherance of a compelling governmental interest and (2) is the least restrictive means of furthering that interest."

The Fifth Circuit counsels that whether the government action or regulation imposes a substantial burden on an adherent's exercise requires a case-by-case, fact-specific inquiry. *Mayfield*, 259 F.3d at 613. Having considered the record carefully, the undersigned believes the Court is without sufficient information to conduct the requisite inquiry at this stage. Neither side produces the policies in question, BOP Policy Statements 4700.06 and 5360.09, in their entirety or expounds upon their application in any meaningful way. *See Butts*, 877 F.3d at 586-87 (observing that "[d]efendants did not specifically identify, or attach copies of, the BOP policies that they argue Martinez was seeking to enforce"); *Damon*, 2015 WL 5559858 at * 2 (evidence of record included affidavits of BOP officials, BOP Program Statement 4700.06, Food Service Manual, Annual Religious Ceremonial Meals Guidance and Menu Worksheet).

For instance, the Regional Director provided the following response during the administrative remedies process:

---

[6] ECF No. 1-, p. 5.

> A review of this matter reveals the Food Service Department at your institution is in compliance with Program Statement 4700.06, <u>Food Service Manual</u>, Chapter 4 (Religious Diet Program). The above mentioned policy states, "The Religious Ceremonial Menu is derived from items from regularly available on National Menus and constitutes the mainline meal available to all inmates. No other foods are authorized for ceremonial meals." The review finds the above policy was followed and the ceremonial meal was prepared and made available to your faith group.[7]

It is not clear from the response whether the meal "made available" to Plaintiff was a self-select meal that allowed inmates "to select the items they wanted" including the ceremonial items, or whether they were "forced to take items they did not want." *Damon,* 2015 WL 5559858 at * 10 (meal provided to Muslim inmate was a self-select meal and Plaintiff "was able to partake in the ceremonial meal with the exception of the one-substituted item").

A court "can only give deference to the positions of prison officials . . . when the officials have set forth those positions and entered them into the record." *Koger v. Bryan*, 523 F.3d 789, 800–01 (7th Cir. 2008); *Carter v. Fleming*, 879 F.3d 132 (4th Cir. 2018) (corrections officials failed to identify an institutional need for serving prisoner foods that Nation of Islam dietary rules prohibited him from eating, and thus, officials were not entitled to summary judgment on prisoner's claim for violation of his religious freedom rights under RLUIPA). Conclusional affidavits or responses "will be insufficient to overcome the policies and procedures embodied in RFRA." *Tagore v. U.S.*, 735 F.3d 324, 332 (5th Cir. 2013); *see also Lovelace v. Lee*, 472 F.3d 174, 191 (4th Cir. 2006) (concluding that prison officials had failed to meet their burden under RLUIPA because

---

[7] ECF No. 2-8.

they had not submitted sworn statements establishing how the challenged practices

furthered a compelling interest, and noting that "it cannot be solved by the court . . .

suggesting on its own the governmental interest that might be present").  Absent further

development of the record and given the fact-intensive nature of this issue, the

undersigned recommends that the Defendant's motion to dismiss Plaintiff's RFRA claim

be denied without prejudice to allow additional briefing and more evidence on this issue.

### C. Equal Protection Claim

Finally, liberally construed, Plaintiff alleges that his right to equal protection has

been violated under the Fourteenth Amendment.  "Fifth Amendment equal protection

claims against federal actors are analyzed under the same standards as Fourteenth

Amendment equal protection claims against state actors." *Butts*, 877 F.3d at 590 (citation

omitted).   To establish an equal protection violation independent of his free exercise

claims, Plaintiff "must prove purposeful discrimination resulting in a discriminatory

effect among persons similarly situated." *Id.* (quoting *Baranowski v. Hart*, 486 F.3d 112,

123 (5th Cir. 2007)).  Discriminatory purpose "implies that the decisionmaker singled out

a particular group for disparate treatment and selected his course of action at least in part

for the purpose of causing its adverse effect on an identifiable group." *Lavernia v.

Lynaugh*, 845 F.2d 493, 496 (5th Cir. 1988) (internal quotation marks omitted).  Plaintiff

does not demonstrate that Defendant Shults acted with a discriminatory purpose or was

even personally involved in the alleged violation.  Nor does he identify any other persons

similarly situated who received superior treatment.  Although he alleges that Muslim

inmates were deprived of both the ceremonial and mainline meal, he does not

demonstrate that this was with discriminatory intent.  Plaintiff has shown no equal protection violation.

## CONCLUSION

For the reasons stated, the undersigned recommends that the Court grant Defendant Shults's motion to dismiss Plaintiff's *Bivens*, RLUIPA, and Equal Protection claims, for failure to state a claim upon which relief may be granted, or in the alternative, for summary judgment. The undersigned recommends that the Court deny Defendant's motion to dismiss Plaintiff's RFRA claim without prejudice, and order that additional briefing be completed.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections.  Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December

1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

 Respectfully submitted on February 11, 2019.


             s/ Linda R. Anderson
             UNITED STATES MAGISTRATE JUDGE