IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**PRINCE KNIGHT**                                                    **PLAINTIFF**

**V.**                                     **CIVIL ACTION NO. 3:18CV34 LG-LRA**

**WARDEN L. SHULTS, ET AL.**                            **DEFENDANTS**

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff Knight is currently incarcerated at the Federal Correctional Complex ("FCC") in Yazoo City, Mississippi. He filed the instant Complaint, pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) against prison officials for allegedly violating his First Amendment constitutional rights, the Religious Freedom Restoration Act ("RFRA"), the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and the Equal Protection Clause. Knight alleges that Defendants Warden L. Shults, Food Service Administrator Z. Lee, and, Assistant Food Service Administrator J. Paxton, improperly denied him the Nation of Islam's Annual Ceremonial meal he requested in accordance with the Bureau of Prison's (BOP) policy. By Order of the Court, Plaintiff's Religious Exercise, RLUIPA, and Equal Protections claims against Defendant Shults were dismissed for failure to state a claim on March 6, 2019. For the reasons set forth therein, the undersigned hereby recommends that Plaintiff's RLUPIA and Equal Protections claims against all remaining Defendants also be dismissed.

As to Plaintiff's remaining claims, the undersigned granted Plaintiff's request for discovery and ordered the parties to submit additional briefing, evidence, and authority to assist with the Court's consideration of the claims and defenses asserted. The parties have now completed discovery and this matter is currently before the Court on the motion for summary judgment of Defendant Paxton [63]. Having considered the submissions of the parties and the applicable law, the undersigned recommends that summary judgment be granted.

**Factual Background**

Plaintiff alleges that he submitted a request, on January 3, 2017, to be served the Nation of Islam's Ceremonial Meal on Tuesday, February 28, 2017, in commemoration of the birth of the religion's founder. Yet, despite receiving the approval of "Religious Services and Food Services," Plaintiff asserts that he was not provided the requested ceremonial meal, which was to consist of: fried fish, steamed broccoli, navy bean soup, vegetable fried rice, macaroni and cheese, banana, and a non-meat option for fish. Plaintiff states that "[u]pon arrival at Food Service with Chaplain Saccucci on 2/28/17 we found . . . that the meal was changed by Mr. Lee to the Chicken patty meal served [to the inmate population] at lunch." He specifically faults Defendant Paxton for preparing and then changing the meal based on Defendant Lee's interpretation of BOP Policy after assuring Knight that the request had been affirmed. As a result of the menu change, Knight claims that "no meal was consumed by the group for that afternoon."[1]

Aggrieved, Knight filed a complaint with the BOP's Administrative Remedies Program, requesting that Defendant Lee be reprimanded and that the requested meal be replaced. He received the following response from the Regional Director:

> A review of this matter reveals the Food Service Department at your institution is in compliance with Program Statement 4700.06, <u>Food Service Manual</u>, Chapter 4 (Religious Diet Program). The above mentioned policy states, "The Religious Ceremonial Menu is derived from items regularly available on National Menus and constitutes the mainline meal available to all inmates. No other foods are authorized for ceremonial meals." The review finds the above policy was followed and the ceremonial meal was prepared and made available to your faith group.[2]

Defendant Paxton issued a similar response to Plaintiff's administrative remedy requests, which Plaintiff contends is based on an erroneous interpretation of BOP policy.

Knight filed the instant Complaint seeking injunctive and declaratory relief as well as $10,000,000 in punitive damages against Defendants for infringing on his right to freely exercise his religion.[3] As evidence in support, Plaintiff submits: (1) Inmate's Request for Ceremonial Meal; (2) Memorandum for "Nation of Islam Saviours' Day

---

[1] ECF No. 1, pp. 4-6; ECF No. 2, p.2-3; *see also* ECF No. 2-1 – 2-5. Although Knight's allegations as to who ordered the meal change were initially inconsistent, it has become clearer through additional briefing and evidence, that Paxton acted at Lee's direction.

[2] ECF No. 2-8.

[3] Knight does not claim that he suffered any physical injury as a result of his alleged First Amendment and RFRA violations. Thus, to the extent he seeks compensatory damages, his claim is barred by the Prison Litigation Reform Act's physical injury requirement. *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005) ("Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury.").

Meal 2017;" (3) FCC Yazoo City Religious Services Schedule; (4) BOP's Weekly Menus "FY-2017;" and, his (5) Administrative Remedy Requests and Responses.[4]

Defendant Paxton seeks summary judgment on each of Plaintiff's claims, on the grounds that the undisputed record evidence establishes that he did not violate Plaintiff's rights under RFRA or any constitutional provision, and alternatively, because he is entitled to qualified immunity. In support, he does not dispute that he prepared a ceremonial meal with the requested items, or that he discarded it at the direction of his supervisor, Defendant Lee. In an affidavit submitted in support of his summary judgment motion, Defendant Paxton avers the following:

> In late January 2017, I was informed of offender Prince Knight's request for the National of Islam's annual ceremonial meal to commemorate Saviours' Day. Mr. Knight's request had been submitted prior to my arrival at FCC Yazoo City and was initially handled by another assistant food services administrator, Patrick Ware. . . .
>
> In my prior experience at other facilities, if an inmate religious group requested items for a ceremonial meal that were listed on the National Menu, every effort was made to provide those items at the ceremonial meal.
>
> Mr. Knight's request included fried fish, steamed broccoli, navy bean soup, vegetable fried rice, macaroni and cheese, and fruit. These items were all listed on the BOP National Menu.
>
> On February 28, 2017, the date scheduled for the Nation of Islam's annual ceremonial meal, I had the Food Service staff cook and prepare the food items that Mr. Knight had requested.
>
> However, when my supervisor, Complex Food Services Administrator Zenas Lee, conducted rounds at the Low Security Institution that morning, prior to the religious meal being served, Mr. Lee informed

---

[4] ECF No. 1-1—1-12.

me that I was breaking BOP policy by attempting to serve food items that were not being served to the rest of the inmate population as the mainline meal. This was based on his interpretation of Program Statement 4700.06, Food Service Manual, Chapter 4, Section 3, which states in pertinent part as follows: "The Religious Ceremonial Menu is derived from items regularly available on National Menus *and constitutes the mainline meal available to all inmates*. No other foods are authorized for ceremonial meals."

Mr. Lee ordered that those participating in the ceremonial meal must be provided the same food items offered to the other inmates at the facility. I later learned this is a policy that has been followed since well prior to my arrival at FCC Yazoo City, and the same policy also is followed at other BOP facilities across the country.

Pursuant to Mr. Lee's instructions, the Food Service staff discarded the food items it had prepared for the religious meal and offered Plaintiff and the other Nation of Islam participants the mainline meal offered to the rest of the prison population on that date. However, because Plaintiff and other Nation of Islam inmates were upset they did not receive the specific food items they had requested for the ceremonial meal, they refused to partake and left.

The chaplain who accompanied Plaintiff and other Nation of Islam inmates to Food Service on the date in question, Timothy Saccucci, made no objections regarding the provision of food items from the mainline meal and for their religious ceremonial meal.

The decision not to provide Mr. Knight the exact food items he requested for the ceremonial meal had nothing to do with his affiliation with the Nation of Islam faith but instead was the result of a good-faith effort to comply with BOP policy.[5]

In addition to this affidavit, Defendant Paxton submits the following exhibits: (1) BOP Program Statement, 4700.06 (Food Service Manual); (2) BOP Program Statement 5360.09 (Religious Beliefs and Practices); (3) and, a Memorandum from BOP's National Food Service Administrator for Health Services ("NFSA") to Food Service staff in all

---

[5] ECF No. 63-1, pp. 2-4 (emphasis added by Paxton).

5

BOP facilities, dated July 8, 2019. The purpose of the memorandum, according to the NFSA, is to provide "guidance on Ceremonial Meal procedures at all Food Service locations starting January 1, 2020." The memorandum reads, in relevant part, as follows:

> . . . . [BOP Program Statement 4700.06] states that ceremonial menus are derived from the National Menu and constitutes the mainline meal available to all inmates. The current practice of inmates filling out a meal request form is not supported by the above policy. Additionally, the Ceremonial Meal differs from the mainline meal served to the general population at various institutions. This practice is in direct conflict with the above policy stating "and constitutes the mainline meal available to all inmates."
>
> Additional policy and guidance [are] available in [BOP Program Statement] 5360.09,[6] Section 18c, Dietary Practices, which states:
>
>> *"To maintain equity in menu design, all meals must be prepared from food items on the institutions master menus."*
>
> The master menus referenced are now the National Menu. [BOP 5360.09] further states:
>
>> *"Chaplains may use a small portion of the annual Chaplaincy Services budget to acquire traditional/ritual foods to supplement the mainline foods served for the ceremonial meal."*
>
> The word supplement means to add an extra element or amount to the meal. Additionally, this traditional/ritual food item would only be served to the inmates participating in the ceremonial meal.
>
> To summarize, the procedures to follow in preparation for a Ceremonial Meal are:

---

[6] BOP Program Statement 5360.09 (Religious Beliefs and Practices) governs inmate religious practices within the BOP institutions. Pursuant to this program statement, inmates of all faith groups must be provided reasonable and equitable opportunities to pursue religious beliefs and practices, within the constraints of budgetary limitations and consistent with the security and orderly running of the institution. *Id.* Such opportunities are open to the entire inmate population, without regard to race, color, nationality, or ordinarily creed. *Id.* Scheduled religious activities are commensurate with the individual institution's mission/need. *Id.*

1. Notification from Chaplaincy Services of a Ceremonial Meal at least 45 days from the scheduled date.

2. The date of the Ceremonial Meal will dictate the meal. For example, if the meal were scheduled for [Wednesday] January 29, 2020, the inmate group would be indicating they want the Hamburger & French Fries. The practice of "a la carte" menu selection is not required nor is it supported by P4700.06.

3. Chaplaincy Services would request Food Service to procure traditional/ritual foods, **if applicable**. Additionally, they would indicate the amount to purchase and provide contact information if specific vendors are required.

4. Food Service would provide the Ceremonial Meal at the time and date approved by Chaplaincy Services.[7]

## BOP Ceremonial Meal Policies and Procedures

As a threshold matter, the NFSA makes clear that BOP's ceremonial meal policy can be found in both Program Statements 4700.06 (Food Service Manual) and 5360.09 (Religious Beliefs and Practices). Thus, although BOP officials have consistently maintained their actions were in compliance with BOP Program Statement 4700.06, both policies are relevant to Plaintiff's claims and both are addressed here. These polices, read in conjunction, indicate that ceremonial meals are to constitute the mainline meal, but may be supplemented with traditional/ritual food items if requisite procedures are followed.

In this regard, BOP Program Statement 5360.09 directs each institution in relevant part, to develop an Institution Supplement "for operating religious programs and

---

[7] ECF No. 63-1, pp. 17-19 (emphasis in original).

activities," including procedures for ceremonial meals. The FCC-Yazoo Institution Supplement YAX5360.09E (Religious Beliefs and Practices),[8] attached as an exhibit to Warden Shults's summary judgment motion, provides that no appropriated funds will be used to supplement ceremonial meals with traditional/ritual foods, and that food items are to be "in accordance with the Food Service Master Menu." Defendant Shults also attaches a blank form which he identifies as the Annual Religious Ceremonial Meals Guidance and Menu Worksheet.[9] Although no accompanying explanation is provided, the form appears to allow the "a la carte" menu selection referenced in the NFSA's recent memorandum; that is, religious groups are permitted to choose an entrée, starch, bread, dessert, drink, soup, sauce, and condiment option from among the menu items listed. No completed form has been presented by any party in this case. However, the undersigned notes that the menu items requested in the "Nation of Islam Saviours Day 2017" memorandum submitted by Knight, as evidence, are all options listed on the form.[10]

## Standard of Review

Summary judgment is appropriate only when the moving party can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-movant. *Nickell v. Beau*

---

[8] The FCC-Yazoo Institution Supplement, dated September 27, 2016, is signed by Warden Shults and the wardens for the other Yazoo facilities.

[9] The form is entitled "Religious Ceremonial Meal Menu."

[10] ECF Nos. 2-2, 63-2, 71-3, 71-4.

*View of Biloxi, L.L.C.,* 636 F.3d 752, 754 (5th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).  A fact is material if its resolution in favor of one party might affect the outcome of the case.  *Anderson,* 477 U.S. at 248.  The evidence and any inferences therefrom are viewed in the light most favorable to the non-movant.  *First Colony Life Ins. Co. v. Sanford,* 555 F.3d 177, 180 (5th Cir. 2009).

**Discussion**

**A.  *Bivens* Damages for First Amendment Free Exercise Claim**

Plaintiff asserts that he is entitled to monetary damages against Defendants because they violated his First Amendment right to freely exercise his religion when they failed to provide the requested ceremonial meal.  The Free Exercise Clause of the First Amendment requires the government to refrain from interfering with the religious beliefs and practices of individuals.  *Cutter v. Wilkinson,* 544 U.S. 709, 719 (2005).  As a prisoner, however, Plaintiff retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system."  *Pell v. Procunier,* 417 U.S. 817, 822 (1974).  Therefore, a government regulation may interfere with the religious beliefs and practices of a prisoner if it is reasonably related to a legitimate penological interest.  *Turner v. Safley,* 482 U.S. 78, 89 (1987) (setting out four-factor test for determining whether a prison regulation that infringes on an inmate's First Amendment rights is nonetheless reasonable and therefore constitutionally valid); *see also Butts v. Martin*, 877 F.3d 571, 585 (5th Cir. 2017) (noting that "free exercise claims in this Circuit are analyzed under the *Turner* framework separately and independently from RFRA and RLUIPA claims").

In *Bivens,* the United States Supreme Court recognized a cause of action for monetary relief for constitutional violations by federal officials as the counterpart for actions brought against state officials pursuant to § 1983. *Bivens*, 403 U.S. at 389–98. However, *Bivens* has never been extended to the First Amendment violations as Knight attempts to do here. *See Reichle v. Howards*, 566 U.S. 658, 672 n. 4 (2012); *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). The remedy is disfavored where there are any existing remedial processes for addressing the alleged harm or special factors counseling hesitation. *Cantú v. Moody*, 993 F.3d 414, 421-22 (5th Cir. 2019); *Rroku v. Cole*, 726 F. App'x. 201, 205 (5th Cir. 2018) (citation omitted). Thus, when a plaintiff seeks to extend *Bivens* to a new context, courts consider whether alternative remedies are already available because the existence of an "alternative remedial structure . . . alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1865-69 (2017).

As the record reflects here, Knight has already availed himself of one such alternative by seeking relief through the Bureau of Prisons' Administrative Remedy Program, which permits "inmate[s] to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). *See Brunson v. Nichols*, No. 1:14CV2467, 2018 WL 7286410, at *3 (W.D. La., Dec. 7, 2018) (collecting cases); *Crowder v. Jones*, No. 2:14CV202-JMS-MJD, 2017 WL 5889717, at *3 (S.D. Ind. Nov. 29, 2017) (declining to find inmate had implied right of action under *Bivens* for First Amendment claim because BOP's administrative remedy provided relief for inmate wrongfully denied a religious diet). That his administrative complaint was ultimately

denied does not mean that the program was not an alternative or meaningful remedial structure, nor does it automatically entitle him to monetary damages under *Bivens*. *Vega v. United States*, 881 F.3d 1146, 1155 (9th Cir. 2018).

Knight can also avail himself of the Religious Freedom Restoration Act ("RFRA") 42 U.S.C. § 2000bb et seq., raised in his Complaint. The RFRA, enacted by Congress to challenge restrictions to the exercise of religious freedom, requires Defendants to show that BOP policy: "(1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest." 42 U.S.C. § 2000cc–1(a)(2000). Such a standard "poses a far greater challenge than does [traditional free exercise analysis] to prison regulations that impinge on inmates' free exercise of religion." *Newby v. Quarterman*, 325 F. App'x 345, 352 (5th Cir. 2009) (quoting *Freeman v. Tex. Dep't of Criminal Justice,* 369 F.3d 854, 858 n.1 (5th Cir. 2004)); *see also Holt v. Hobbs*, 574 U.S. 352 (2015) (observing that RLUIPA provides greater protection than *Turner* analysis).

Because Knight has alternative remedies available to him, and the Supreme Court has never implied a *Bivens* action for First Amendment claims, the Court should decline to extend a *Bivens* remedy and dismiss this claim against all Defendants on this basis alone. *Abbasi*, 137 S. Ct. at 1858. Notwithstanding, to the extent the Court finds that Plaintiff has an available *Bivens* remedy, the undersigned submits that his failure to establish a triable claim in response to Defendants' summary judgment motion is fatal to both his RFRA and *Bivens* claims.

### B. RFRA Claims

As noted, the government is prohibited under RFRA from substantially burdening "a person's exercise of religion even if the burden results from a rule of general applicability" unless the government demonstrates a compelling interest achieved by the least restrictive means. 42 U.S.C. § 2000bb-1(a)-(b). The Fifth Circuit has explained that:

> [A] government action imposes a substantial burden on religious exercise if it "truly pressures the adherent to significantly modify his religious behavior and significantly violates his religious beliefs." ….
> [T]he effect of a government action or regulation is significant when it either (1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs. On the opposite end of the spectrum, however, a government action or regulation does not rise to the level of a substantial burden on religious exercise if it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed.

*Mayfield v. Texas Dept. of Criminal Justice*, 529 F.3d 599, 613 (5th Cir. 2008) (applying RLUIPA).[11]

Plaintiff bears the initial burden of establishing that his ability to practice his religion is substantially burdened. *Brown v. Collier,* 929 F.3d 218, 229 (5th Cir. 2019) (applying RLUIPA). If a plaintiff meets his burden of proof, the burden shifts to the government to demonstrate that its action was supported by a compelling interest and that

---

[11] Because the statutes mirror each other, courts commonly apply RFRA case law to issues arising under RLUIPA and vice versa. *See Redd v. Wright*, 597 F.3d 532, 535 n. 2 (2d Cir. 2010).

the regulation is the least restrictive means of carrying out that interest. *Id.* In making this assessment, courts must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Id.* (citation omitted). Whether there has been an RFRA violation therefore requires a "fact-specific inquiry that takes into account the special circumstances of the individual prisoner and prison." *Chance v. Texas Dept. of Criminal Justice*, 730 F.3d 404, 411 (5th Cir. 2013) (applying RLUIPA). Summary judgment must be granted if there are no material facts in dispute to present a triable claim.

In the instant case, there is no dispute that the requested menu items on the day in question were derived from the National Menu. There also appears to be no dispute that the ceremonial meal qualifies as a religious exercise for the Muslim faith under RFRA's definition. Federal regulations also clearly provide that inmate religious groups are allowed one ceremonial meal per year. 28 C.F.R. § 548.20.[12] However, per the NFSA's recent memorandum, "the date of the Ceremonial Meal will dictate the meal." Although this guidance was issued after the undersigned's discovery order and became effective "starting January 1, 2020," it is consistent with the terms of BOP 4700.06 as it existed at the time, i.e.—that "ceremonial meals constitute the mainline meal available to all inmates" and "[n]o other foods are authorized for ceremonial meals." And, even though

---

[12] Plaintiff also cites 28 C.F.R. § 547.20, which provides in relevant part, that special food or meals "may be prepared and/or served to a specific group of inmates rather than to the entire inmate population of the institution" for "[r]eligious dietary practices as authorized in accordance with 28 C.F.R. § 548.20." However, this regulation is not inconsistent with BOP 47006.06 or 5360.09.

13

Defendant Paxton acknowledges that he, like Knight, thought it was permissible to serve a ceremonial meal that differed from the mainline meal, to have done so would have been in violation of the terms of BOP Program Statement 4700.06, as explained by (1) Defendant Lee on the day in question; (2) the Regional Director in response to Plaintiff's administrative remedies; and, (3) the NFSA in his recent memorandum.

Knight does not appear to dispute that Defendants complied with the *terms* of the BOP 4700.06. Rather, drawing all reasonable inferences in his favor, his contention appears to be based on two things: (1) This was not the practice at FCC-Yazoo; and, (2) this conflicts with BOP Statement 5360.09.

As to the first, the NFSA acknowledges in his memorandum that "various institutions" had a practice of allowing meal request forms and ceremonial meals that differed from the mainline meal, contrary to BOP Statement 4700.06. The parties dispute whether this was the practice at FCC-Yazoo but the FCC-Yazoo Institution Supplement and "Religious Ceremonial Meal Menu" submitted by Warden Shults suggest the practice was allowed. But as further set forth herein, the failure to adhere to the practice is not dispositive of Plaintiff's RFRA claim.

As to the second, although BOP Statement 4700.06 provides that "no other foods are authorized for ceremonial meals," BOP Statement 5360.09 allows a prison chaplain to request that traditional/ritual food items be served to inmates participating in the ceremonial meal. Knight avers, and Defendants do not dispute, that the menu items requested for the Islamic ceremonial meal for lunch on Tuesday, February 28, 2017, were approved. Although Paxton avers that the request was initially handled by another food

14

services administrator prior to his arrival, he acknowledges that he directed the "Food Service staff to cook and prepare the food items that Mr. Knight had requested." Both sides agree that the menu was then changed at the direction of Paxton's supervisor, Defendant Lee, to the "chicken-patty" meal served as the mainline meal because it was inconsistent with BOP Program Statement 4700.06. But it is not enough to show that a menu change occurred. To establish an RFRA violation, Plaintiff must show that this menu changes substantially burdened his ability to practice his religion. He fails to make this showing.

Plaintiff claims in opposition to summary judgment, for instance, that "[n]o alternative was offered or provided as a meat substitute for chicken patties.[13] However, he does not answer Defendant Paxton's charge in rebuttal, that "when chicken patties were served as the mainline meal, a soy chicken patty option was also made available." In support, Defendant Paxton cites BOP's 2017 National Menu which is published on the agency's website. The undersigned takes judicial notice that the menu also specifically lists "soy chicken patties" as the alternative meat option *for lunch on Tuesdays*, when the ceremonial meal was scheduled to have been served in this case. https://www.bop.gov/foia/docs/fy17nationalmenusenglish-spanish-specialty-nutritionalinfo.pdf. *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005)

---

[13] Knight also claims that no alternatives were provided for "any other food that conflicts with dietary restrictions as provided to the rest of the inmate population." However, he does not identify any specific food or dietary conflict.

(courts may take judicial notice of government websites).[14]  BOP 4700.06 additionally indicates that "[a] no-flesh protein option will be provided at both noon and evening meals whenever a main entrée containing flesh is offered."  It also provides that "[v]egetables and starches seasoned with flesh will have an alternate no-flesh option."[15]

The fact that Knight does not dispute or otherwise address this point in his reply memorandum is critical for several reasons.  In his pleadings and the exhibits attached thereto, Plaintiff states that he has been a practicing Muslim for eight years, and that the Defendants' failure to provide the requested meal substantially burdened his sincerely held religious beliefs in violation of RFRA.  He avers that even though the ceremonial meal was pre-approved and readily available from the National Menu items at no extra cost or work to BOP, the meal was not provided.  Yet, Plaintiff has never claimed that the ceremonial meal he requested—fried fish, steamed broccoli, navy bean soup, vegetable fried rice, macaroni and cheese, banana, and a non-meat option for fish—consisted of traditional or ritual food items.  Rather, Knight's objection to the meal rests on his assertion and/or belief that the chicken-patty meal provided was prohibited by his Muslim faith.

Defendant Paxton notes that this position is at odds with the one taken by Muslim inmates in *Damon v. Masters,* who requested chicken-patties be included in their

---

[14] Knight's own exhibits include the BOP's weekly menus "FY 2017" listing "soy chicken patty" as an available option for Tuesday lunch meals.  However, the undersigned notes that the exhibits indicate that the date range is for 2016. ECF No. 2-12.

[15] ECF Nos. 69, p. 2, n. 1; 71-1, p. 24.

ceremonial meal. No. 1:14CV26833 DAF-SMH, 2015 WL 5559858 (S.D. W.V., Aug. 25, 2015) (objection to the substitution of kidney beans for navy beans in the ceremonial meal). However, "the guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect." *Thomas v. Review Board of Indiana Security Division*, 450 U.S. 707, 715-16 (1981). "Intrafaith disagreements 'are not uncommon among followers of a particular creed, and . . . the judicial process is singularly ill equipped to resolve such differences.'" *Tucker v. Collier*, 906 F.3d 295, 303 (5th Cir. 2018) (quoting *A.A. ex rel. Betenbaugh v. Needville Indep. School Dist*., 611 F.3d 248, 261 (5th Cir. 2010)). However, Knight still bears the "burden of demonstrating the honesty and accuracy of his contention that the religious practice at issue is important to the free exercise of his religion." *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004).

To this end, Knight asserts that while "[n]ot all practitioners of Islam have the same level of understanding, study, and desire to live strictly by Islamic Law as others," he "strives to elevate his understanding and practice of Islam." The dietary practices of his religion, according to Knight, preclude consuming chicken "unless raised in the right way." Followers are encouraged "to gradually stop eating chicken … and must wean away from flesh." Consequently, he has "not consumed chicken in over five years." In Knight's view, "[t]o present chicken patties as a supplement to the requested Fish[16] is

---

[16] The undersigned notes that Knight's arguments have evolved over the course of the proceedings. In his Complaint, he asserted that Muslim inmates requested both "fried fish" and a "non-meat option for fish" for the ceremonial meal, of which a soy patty clearly qualifies. However, in his reply brief, he appears to suggest that fish was the only request made. He also asserted during the administrative remedies process that "[i]f communities are to receive the meal offered at lunch it is in essence not a Ceremonial meal just lunch."[16] ECF No. 2-8.

17

violative of policy, law and dietary practices placed within Islam, as it is to be practiced by the Nation of Islam."[17]

Knight cannot survive summary judgment by resting on his allegations and pleadings alone. *Walker v. United States,* 5 F.3d 1495 (5th Cir. 1993). He must point to "specific facts showing that there is a genuine issue for trial." *Celotex v. Catrett*, 447 U.S. at 317, 324 (1986). While he may have sincerely believed that he was being pressured to consume a "flesh" option in violation of Islamic dietary practices when he arrived for lunch that Tuesday, he was simply mistaken. The uncontroverted summary judgment evidence supports the conclusion that the chicken-patty meal provided included a no-flesh option. That it was not the "fish" requested for the ceremonial meal does not detract from the fact that Muslim inmates were provided a no-flesh option. Knight does not contend that fish, or any other requested item, was a ritual or traditional food required for the ceremonial meal, nor does he assert that a soy patty was a violation of Islamic dietary practices.

Even if the requested menu was a traditional or ritual menu for Islamic ceremonial meals, "the denial of a single meal has been held to not constitute a substantial burden on the exercise of one's religion." *Rogers v. United States*, 696 F. Supp.2d 472, 487-88 (W.D. Pa. 2010) (collecting cases). Moreover, even if FCC-Yazoo allowed ceremonial

---

However, "a government action or regulation does not rise to the level of a substantial burden on religious exercise if it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed." *Mayfield*, 529 F.3d at 616 (quoting *Adkins*, 393 F.3d at 570).

[17] ECF No. 68, pp. 11-13.

meals different from the mainline meal, BOP Program Statement 5360.09 provides that traditional/ritual foods may be acquired to *supplement,* not substitute, the mainline foods served for the ceremonial meal. As the NFSA explains in his memorandum, the "word supplement means to add an extra element or amount to the meal."

## Conclusion

Based upon the foregoing, Knight has failed to show that substitution of the mainline menu items for the ceremonial meal on February 28, 2017, substantially burdened his religious beliefs in violation of RFRA. The failure is fatal to both his RFRA and *Bivens* claims. *Newby*, 325 F. App'x at 352. Accordingly, the Court need not address whether the government's conduct was supported by a compelling interest or the least restrictive means of carrying out that interest. Because the undersigned so finds, Defendant Paxton's alternative qualified-immunity argument also need not be reached.

For the reasons stated herein and, in the undersigned's previous Report and Recommendation, the undersigned recommends that the Defendant Paxton's Motion for Summary Judgment be granted and all claims against both Defendants Paxton and Lee be dismissed.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections. Within 7 days of the service of

the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted on February 7, 2020.

s/ Linda R. Anderson<br>
UNITED STATES MAGISTRATE JUDGE