UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI



F I L E D

Feb 07 2020

Arthur Johnston, Clerk
By: _____, Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**PRINCE KNIGHT**                                                                      **PLAINTIFF**

**V.**                                                **CIVIL ACTION NO. 3:18CV34 LG-LRA**

**WARDEN L. SHULTS, ET AL.**                                                    **DEFENDANTS**

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

The facts, procedural history, and relevant law are detailed in the undersigned's previous Report and Recommendations and will not be repeated in depth herein. Plaintiff Knight is currently incarcerated at the Federal Correctional Complex ("FCC") in Yazoo City, Mississippi. He filed the instant Complaint alleging prison officials committed constitutional and statutory violations by failing to provide the Nation of Islam's Annual Ceremonial meal in accordance with the Bureau of Prison's (BOP) policy on Tuesday, February 28, 2017. By Order of the Court, Plaintiff's Religious Exercise, Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and Equal Protections claims against Defendant Shults were dismissed for failure to state a claim on March 6, 2019. Having conducted discovery and submitted additional briefing and evidence, this matter is now before the Court on the renewed motion of Defendant Shults, [ECF 61] who seeks summary judgment on Plaintiff's only remaining claim against him—that he violated Plaintiff's rights under the Religious Freedom and Restoration Act ("RFRA").

In support, Defendant Shults submits a second declaration in which he makes many of the same averments from his initial declaration. In addition, he submits the

following exhibits: (1) BOP Program Statement, 4700.06 (Food Service Manual); (2) BOP Program Statement 5360.09 CN1 (Religious Beliefs and Practices); (3) FCC-Yazoo City Institution Supplement YAX5360.09E (Religious Beliefs and Practices); and, (4) Annual Religious Ceremonial Meals Guidance and Menu Worksheet.[1]

Also, before the Court is a memorandum dated July 8, 2019, from BOP's National Food Service Administrator ("NFSA") to Food Service staff in all BOP facilities submitted by Defendant Paxton in support of his summary judgment motion. The memorandum, set forth in its entirety in the undersigned's previous Report and Recommendation, cites the relevant excerpts from BOP Program Statements 4700.06 (Food Service Manual) and 53603.09 (Religious Beliefs and Practices). The purpose of the memorandum, according to the NFSA, is to provide "guidance on Ceremonial Meal procedures at all Food Service locations starting January 1, 2020." It specifically cautions that the practice at various institutions of allowing meal request forms and ceremonial meals that differed from the mainline meal is contrary to BOP Statement 4700.06.[2]

In opposition to summary judgment, Plaintiff submits: (1) Inmate's Request for Ceremonial Meal; (2) Memorandum for "Nation of Islam Saviours' Day Meal 2017;" (3) FCC Yazoo City Religious Services Schedule; (4) BOP's Weekly Menus "FY-2017;" and, his (5) Administrative Remedy Requests and Responses[3]. Having considered the

---

[1] ECF No. 71-1—71-4.

[2] ECF No. 63-1, pp. 17-19.

[3] ECF No. 1-1—1-12.

2

submissions of the parties and the applicable law, the undersigned recommends as follows.

## BOP Ceremonial Meal Policies and Procedures

The NFSA makes clear that BOP's ceremonial meal policy can be found in both Program Statements 4700.06 (Food Service Manual) and 5360.09 (Religious Beliefs and Practices). These polices, read in conjunction, indicate that ceremonial meals are to constitute the mainline meal, but may be supplemented with traditional/ritual food items if requisite procedures are followed.

BOP Program Statement 5360.09 also directs each institution in relevant part, to develop an Institution Supplement "for operating religious programs and activities," including procedures for ceremonial meals. In this regard, Warden Shults has submitted FCC-Yazoo City Institution Supplement YAX5360.09E, which provides that no appropriated funds will be used to supplement ceremonial meals with traditional/ritual foods, and that food items should be "in accordance with the Food Service Master Menu." This document, dated September 27, 2016, is signed by Warden Shults and the wardens for the other Yazoo facilities. Defendant Shults also attaches an Annual Religious Ceremonial Meals Guidance and Menu Worksheet.[4] Although no accompanying explanation is provided, the form appears to allow the "a la carte" menu selection referenced in the NFSA's recent memorandum; that is, religious groups are

---

[4] The form is entitled "Religious Ceremonial Meal Menu."

permitted to choose an entrée, starch, bread, dessert, drink, soup, sauce, and condiment option from among the menu items listed.  No completed form has been presented by any party in this case, but the undersigned notes that the food items requested in the "Nation of Islam Saviours Day 2017" memorandum submitted by Knight are all listed on the form.[5]

## Standard of Review

Summary judgment is appropriate only when the moving party can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-movant. *Nickell v. Beau View of Biloxi, L.L.C.,* 636 F.3d 752, 754 (5th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).  A fact is material if its resolution in favor of one party might affect the outcome of the case.  *Anderson,* 477 U.S. at 248.  The evidence and any inferences therefrom are viewed in the light most favorable to the non-movant.  *First Colony Life Ins. Co. v. Sanford,* 555 F.3d 177, 180 (5th Cir. 2009).

## Discussion

The RFRA, enacted by Congress to challenge restrictions to the exercise of religious freedom, prohibits government officials from substantially burdening "a person's exercise of religion even if the burden results from a rule of general applicability" unless the government demonstrates a compelling interest achieved by the

---

[5] ECF Nos. 2-2, 63-2, 71-3, 71-4.

least restrictive means. 42 U.S.C. § 2000bb-1(a)-(b). A substantial burden on religious exercise occurs if it "truly pressures the adherent to significantly modify his religious behavior and significantly violates his religious beliefs." *Adkins v. Kaspar,* 393 F.3d 559, 570 (5th Cir. 2004). Whether there has been an RFRA violation requires a "fact-specific inquiry that takes into account the special circumstances of the individual prisoner and prison." *Chance v. Texas Dept. of Criminal Justice*, 730 F.3d 404, 411 (5th Cir. 2013) (applying RLUIPA).

In his renewed summary judgment motion, Warden Shults reiterates that he had no personal involvement in the denial of Knight's rights under the RFRA. He specifically denies that he had any personal involvement in the meal change or the responses to Plaintiff's administrative remedies request.[6] He also denies that he instituted an unconstitutional policy that substantially burdened Plaintiff's ability to freely exercise his religion. In response, Plaintiff continues to suggest that Warden Shults is liable because his ceremonial meal and administrative appeals were denied "on his watch as Executive Officer."[7] Construed liberally, he also faults Warden Shults for failing to adhere to what appears to be the FCC-Yazoo policy of allowing meal request forms and ceremonial meals that differed from the mainline meal.

---

[6] *See also White v. Sherrod,* No. 07–821, 2009 WL 196332, at *1 (S.D. Ill. Jan. 28, 2009) (allegations that warden violated RFRA because he denied administrative appeal insufficient to state a claim upon which relief may be granted); *Curry v. Gonzales,* No. 07–0199, 2007 WL 3275298, at *1 (D.D.C. Nov. 6, 2007) (RFRA and *Bivens* claim dismissed for failure to allege officials personal involvement).

[7] ECF No. 65, p. 2.

As noted in the undersigned's earlier Report and Recommendation, courts confronted with free exercise claims against supervisory officials differ on whether RFRA and *Bivens* liability are necessarily parallel.[8] Courts consider not only the official's actions but institutional policy, and are careful to assess whether the liability is predicated on vicarious or direct liability.[9] However, this assessment need not be undertaken here because Plaintiff fails to establish a prima facie RFRA claim.

To meet his RFRA burden, Knight must demonstrate that he felt pressured "to significantly modify his religious behavior and significantly violate his religious beliefs."

---

[8] *Compare Patel v. Bureau of Prisons*, 125 F. Supp. 3d 44 (D.C. 2015) (concluding that as a matter of first impression, pure vicarious liability is not sufficient to state a claim under RFRA, which "does not by its terms authorize a further step away from the background of §1983 and *Bivens* precedents to impose vicarious liability"); *Agrawal v. Briley,* No. 02–6807, 2004 WL 1977581, at *14-15 (N.D. Ill. Aug. 25, 2004) (applying RLUIPA) ("In speaking of liable parties as "governments" rather than "persons," RLUIPA appears implicitly to authorize *respondeat superior* liability against municipalities . . .").

[9] *Compare Wilkinson v. Secy, Florida Dep't of Corr.*, 622 F. App'x 805 (11th Cir. 2015) ("Construed liberally, Mr. Wilkerson's claims [against Secretary of Florida Department of Corrections] were based not on *respondeat superior,* but instead on an FDOC policy or custom that allegedly substantially burdened Mr. Wilkinson's religious exercise. And the claims were advanced not under §1983 but under RLUIPA. Put differently, Mr. Wilkinson's claims were predicated on a theory of direct liability rather than of vicarious liability, and were formulated under RLUIPA rather than §1983. For these reasons, the claims are cognizable, and the district court erred in ruling otherwise."); *Keen v. Noble*, No. CV F 04-5645 AWI-WMW P, 2007 WL 2789561, at *6 (E.D. Cal., Sept. 20 2007) (observing that theory of liability against BOP Director not based solely on theory of *respondeat superior* but based on the fact she allegedly created a policy that set in motion a series of acts by others that Director knew or reasonably should have known would cause other BOP officials to violate Plaintiff's rights; by delegating to others the authority to sign on his behalf, defendant acquiesced to the alleged constitutional deprivations of his employees and was not entitled to dismissal or summary judgment on First Amendment claim). *Agrawal,* 2004 WL 1977581, at *14-15 (observing that "[i]n speaking of liable parties as 'governments' rather than 'persons' declining to enter judgement on a vicarious liability claim under RLUIPA where warden, who was in a "better position than [subordinate] to evaluate whether requiring written verification [from a clergy member] was least restrictive means" of furthering government interest, had "deliberate[ly] avoid[ed] any involvement in review of Plaintiff's grievance").

*Adkins v. Kaspar,* 393 F.3d 559, 570 (5th Cir. 2004). To this end, in his pleadings and the exhibits attached thereto, he states that he has been a practicing Muslim for eight years, and the defendants' failure to provide the requested meal substantially burdened his sincerely held religious beliefs in violation of RFRA. The dietary practices of his religion, according to Knight, preclude consuming chicken "unless raised in the right way." Followers are encouraged "to gradually stop eating chicken … and must wean away from flesh." In Knight's view, "[t]o present chicken patties as a supplement to the requested Fish is violative of policy, law and dietary practices placed within Islam, as it is to be practiced by the Nation of Islam." Thus, Knight's objection to the meal rests on his assertion and/or belief that the chicken-patty meal provided was prohibited by his Muslim faith.[10]

However, the undersigned takes judicial notice that BOP's 2017 National Menu, specifically lists "soy chicken patties" as the alternative meat option ***for lunch on Tuesdays***, when the ceremonial meal was scheduled to have been served in this case. https://www.bop.gov/foia/docs/fy17nationalmenusenglish-spanish-specialty-nutritionalinfo.pdf. *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005) (courts may take judicial notice of government websites).[11] Defendant Paxton also asserts that "when chicken patties were served as the mainline meal, a soy chicken patty

---

[10] ECF No. 68, pp. 11-13.

[11] Knight's own exhibits include the BOP's weekly menus "FY 2017" listing "soy chicken patty" as an available option for Tuesday lunch meals. However, the undersigned notes that the exhibits indicate that the date range is for 2016. ECF No. 2-12.

7

option was also made available." BOP 4700.06 additionally indicates that "[a] no-flesh protein option will be provided at both noon and evening meals whenever a main entrée containing flesh is offered." It also provides that "[v]egetables and starches seasoned with flesh will have an alternate no-flesh option."[12]

While Knight may have sincerely believed that he was being pressured to consume a flesh option in violation of Islamic dietary practices when he arrived for lunch that Tuesday, the uncontroverted summary judgment evidence supports the conclusion that the chicken-patty meal provided included a no-flesh option. That it was not the "fish" requested for the ceremonial meal does not detract from the fact that Muslim inmates were provided a no-flesh option. Knight does not contend that fish, or any other requested item, was a ritual or traditional food required for the ceremonial meal, nor does he assert that a soy patty was a violation of Islamic dietary practices.

Even if the requested menu was a traditional or ritual menu for Islamic ceremonial meals, "the denial of a single meal has been held to not constitute a substantial burden on the exercise of one's religion." *Rogers v. United States*, 696 F. Supp.2d 472, 487-88 (W.D. Pa. 2010) (collecting cases). Moreover, even if FCC-Yazoo had a practice of allowing ceremonial meals different from the mainline meal, BOP Program Statement 5360.09 provides that traditional/ritual foods may be acquired to *supplement,* not substitute*,* the mainline foods served for the ceremonial meal. As the NFSA explains in

---

[12] ECF Nos. 69, p.2, n. 1; 71-1, p. 24.

his memorandum, the "word supplement means to add an extra element or amount to the meal."[13]

Based upon the foregoing, Knight has failed to show that substitution of the mainline menu items for the ceremonial meal on February 28, 2017, substantially burdened his religious beliefs in violation of RFRA. Accordingly, the court need not address whether the government's conduct was supported by a compelling interest or the least restrictive means of carrying out that interest.

## Conclusion

For these reasons and for those stated in the previous Report and Recommendations, the undersigned recommends that the Defendant Shults's Motion for Summary Judgment be granted and all claims against him be dismissed.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and

---

[13] ECF No. 63-1, pp. 17-19.

recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

    Respectfully submitted on February 7, 2020.

                                            s/ Linda R. Anderson  
                                     UNITED STATES MAGISTRATE JUDGE